INGRAM, Justice.
The Alabama Public Service Commission (“APSC”) and certain protesting carriers appeal from a circuit court’s judgment reversing a decision of the APSC.
C.I.M. Trucking Company (“CIM”) filed an application with the APSC for authority to institute a new operation as a contract carrier by motor vehicle in intrastate commerce over irregular routes in the transportation of the following items and upon the following conditions:
“Metal products from the facilities of Gulf States Steel, Inc., in Gadsden, to all points in Alabama, and on return loads, from the consignee’s facility scrap metal to the facilities of Culp Industries, Inc., in Attalla.” (Application as amended.)
The application was protested by Neely Truck Lines, Inc., Vulcan Freight Lines, Inc., Cook Transports, Inc., Alabama Freight, Inc., and Victory Freight Lines, Inc. (“protestants”).
A hearing on the application was held before an administrative law judge, without any APSC commissioners present or participating. After the evidentiary hearing, the administrative law judge issued an order reading, in pertinent part, as follows:
“The Applicant proposes to use trailers that are able to transport new steel products and also handle scrap metal. It would transport a load of new steel products from Gulf States Steel to its customer, leave that trailer at the customer’s facility to be loaded with scrap material, then transport a new load of finished product from Gulf States Steel to that customer and pick up the load of scrap material. It may take a day, a week, or a month for the trailer to be filled with scrap metal. The equipment that is usually used to transport finished steel products are flatbed trailers. The trailers that usually transport scrap metal have four-foot sides. The weight and volume of scrap metal prevents a regular flatbed trailer with sides from being sufficient. ... The Applicant also has some self-dumping hoppers that it plans to leave at the customer’s facility to transfer material from inside the plant to the trailers.... In handling shipments of scrap, a lot of times there are problems with the trailer being overloaded. As a result, the Applicant has a mobile crane to send to the customer location.
[[Image here]]
“One purpose of the application is to increase Culp Industries’ ability to buy scrap. It presently has only a couple of places where it buys scrap. This applica *1345 tion will help it to get scrap that is otherwise unobtainable.
“When scrap is purchased indiscriminately, the source and the chemistry of the scrap metal is unknown. Scrap purchased from customers of Gulf States Steel is a better quality of scrap because the chemistry is known.
[[Image here]]
“... The arrangement with the Applicant is important to help Culp Industries increase the volume of scrap it processes. The arrangement will increase the area in which it can purchase scrap and produce a higher quality of scrap.
[[Image here]]
“The scrap movement, however, will not exist if equipment must move empty to make the pickup. Protestants are not eager to transport scrap metal in their trailers, and are unwilling or unable to leave a trailer for 30 days or more for loading. Therefore, it is likely that Protestants will not provide the transportation of the scrap unless it is in trailers provided by Culp Iron and Metal [CIM].
“A grant of the application could divert some shipments from Protestants. Nevertheless, authority limited to the steel movements needed to support the scrap movements would prevent the amount of diversion Protestants fear. In addition, the scrap movements could mean Protestants would not lose traffic and would increase the volume of traffic they receive.”
The order further recommended that the protestants be allowed, within 30 days, to advise the APSC in writing if an agreement was reached with CIM on the movement of scrap metal. Absent such an agreement, the administrative law judge recommended that a motor carrier permit should be issued to CIM. The protestants requested, and were granted, an extension of time to comply with the administrative law judge’s recommended order. However, no agreement was reached within the applicable time, and the protestants filed their exceptions to the administrative law judge’s report and recommended order.
The APSC heard arguments concerning CIM’s application and concluded that, based on the evidence, “we are not convinced the common carriers cannot provide the service needed in transporting scrap.” Further, the APSC found that
“[c]ommon carriers can provide the service needed and erosion of common carrier revenue and service would result from a grant of the application. As a result, this record does not establish that the proposed operation would be consistent with the public interest.”
The APSC then denied CIM’s application.
Pursuant to Ala.Code 1975, § 37-3-29, CIM appealed to the Circuit Court of Eto-wah County. The circuit court reversed the order of the APSC and remanded the case with instructions to grant CIM’s application “pursuant to the terms and conditions in the Report and Recommended Order of the Administrative Law Judge.” These appeals by the APSC and the protestants followed.
Prior to engaging in operations as a common carrier by motor vehicle, an applicant must obtain a certificate from the APSC. Ala.Code 1975, § 37-3-11. Such a certificate can be issued only if the APSC finds (1) that the applicant is fit, willing, and able to properly perform the service of a contract carrier by motor vehicle and to conform to the provisions of the Alabama Motor Carrier Act and the regulations of the APSC and (2) that the proposed service is, or will be, required by the present or future public convenience and necessity. Alabama Public Service Commission v. Purolator Courier Corp., 533 So.2d 237 (Ala.1988). In making these findings, the APSC is required to consider:
“(1) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs;
“(2) The financial ability of the applicant to furnish adequate, continuous and uninterrupted service the year around; and
“(3) The advantages to the public of the proposed service.”
533 So.2d at 239. Once the APSC makes a decision, the order shall be taken as prima *1346 facie just and reasonable. Ala.Code 1975, § 37-1-124. The order may be set aside if the court finds that
“(1) The commission erred to the prejudice of appellant’s substantial rights in its application of the law; or,
“(2) The order, decision or award was procured by fraud or was based upon a finding of facts contrary to the substantial weight of the evidence.”
Ala.Code 1975, § 37-1-124.
This Court has held that where the evidence is heard by an administrative law judge, and not by the members of the APSC, the presumption of correctness normally accorded to the APSC’s order will be accorded to the administrative law judge's findings of fact. Purolator Courier, supra. However, the ore tenus rule does not mandate a presumption of correctness in favor of the administrative law judge’s conclusions of law. Purolator Courier, supra.
In this case, the administrative law judge and the APSC reached opposite results based upon the same evidence. The administrative law judge made specific findings of fact and, as noted above, found that the “[pjrotestants are not eager to transport scrap metal in their trailers, and are unwilling or unable to leave a trailer for 30 days or more for loading.” Nevertheless, based on the same evidence[1] that was before the administrative law judge, the APSC reached a different conclusion. It concluded: “[W]e are not convinced the common carriers cannot provide the service needed in transporting scrap.”
We have reviewed the record, as well as the applicable case law, and it is this Court’s opinion that the above conclusion of the APSC is not a conclusion of law. Rather, it is a factual finding, “diametrically opposite to the findings of the administrative law judge.” Purolator, supra. Therefore, pursuant to the ore tenus presumption, the findings of fact of the administrative law judge are presumed correct, and his findings will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the findings are found to be plainly and palpably wrong. Purolator, supra.
Here, the record reveals that CIM is a scrap processor. At the present time, scrap does not move for long distances because the one-way deadhead movement of the equipment causes the freight costs to be too high. The scrap movement sought by CIM could become feasible if the deadhead movement could be replaced with a load.
Further, the record reveals that CIM has acquired equipment that will handle both steel products and scrap metal. This specifically designed trailer is unique in its capacity to provide both services, whereas the protestants do not possess such trailers. Further, CIM possesses self-dumping hoppers, which may be left at the customer location to assist the customer in loading its scrap metal onto the trailer for recovery by CIM. CIM also possesses mobile cranes to assist in unloading any trailer overloaded with scrap metal.
The record also shows the protestants’ lack of interest in entering the scrap metal transportation market. There was testimony that one protestant had handled the movement of scrap metal in the past, but had ceased doing so because of damage to its equipment caused by such movement. There was further testimony that that protestant does not intend to move the scrap metal, does not have mobile cranes to service the accounts, and has not set aside the resources necessary to enter the scrap metal market. There was further testimony that other protestants do not desire to participate in the movement of scrap metal. With respect to the length of time that the protestants would be willing to leave their trailers at the customer location, no protestant could guarantee that it could allow its trailers to remain the length of time it might take to fill them with scrap metal
*1347 We have reviewed the administrative law judge’s detailed and comprehensive order, as well as the transcript of the hearing, and we cannot say that the findings of the administrative law judge are plainly and palpably wrong. He observed the witnesses as they testified and was in a better position to weigh their testimony, as well as to interpret the testimony and ascertain the truth. This opportunity to observe the witnesses “gives rise to the strong presumption of correctness of the [administrative law judge’s] findings.” Purolator, supra.
In view of the above, the circuit court’s judgment is due to be affirmed.
1900329, AFFIRMED.
1900330, AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.

. We note that the attorneys argued their respective cases before the APSC. However, there was no examination or cross-examination of witnesses. Visual aids were used for the purpose of demonstration or explanation, but nc document or exhibit was offered or accepted into evidence.